IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| Peggy Baldwin Barr, ) | Case No. 05-14532C-13G |
| ) | |
| Debtor. ) | |

### MEMORANDUM OPINION

This case came before the court on March 14, 2006, for a hearing on the confirmation of the Debtor's proposed plan of reorganization and for a hearing on the Chapter 13 Trustee's objection to confirmation.[1] Stephen D. Ling appeared on behalf of the Debtor and Jennifer R. Harris appeared on behalf of the Trustee, Anita Jo Kinlaw Troxler. For the reasons that follow, the court has concluded that the objection should be overruled and the plan confirmed.

### FACTS

The Debtor has an annualized income of $78,372.00 which significantly exceeds the applicable median family income of $49,206.00. The Debtor proposes in her plan to pay the greater of the amount necessary to pay all allowed costs of administration and all priority and secured claims, with the exception of continuing long term debts. The Debtor proposes to pay nothing to her unsecured creditors who are owed $28,979.00.

---

[1] This case was filed on December 15, 2005, and therefore is subject to the amendments to the Bankruptcy Code contained in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").

Pursuant to the calculations called for under section 1325(b)(2) and (3), the Debtor lists current monthly income of $6,531.00 and expenses and deductions, computed in accordance with section 707(b)(2)(A) and (B), which total $6,607.47. Based upon these statutory calculations, the monthly disposable income shown by the Debtor in her Form B22C is a negative figure of $76.47. However, according to Debtor's Schedules I and J, the Debtor has actual current net income of $4,667.00 per month, actual current expenditures of $2,529.00 per month and net disposable income of at least $2,038.00 per month which she actually receives. It thus appears that the Debtor not only will be able to make the proposed plan payment of $1,525.00 per month, but also will have at least $513.00 per month left after doing so. The Debtor's unwillingness to commit any of those remaining funds to her plan is the primary factor that prompted the Trustee's objection to confirmation pursuant to section 1325(a)(3).

## ANALYSIS

The Trustee's contention that the Debtor's plan does not comply with the good faith requirement of section 1325(a)(3) is based upon a single factor – the amount of the proposed plan payment. In a nutshell, the Trustee argues that the Debtor failed to propose a plan in good faith because, based upon the actual income and actual expenses reflected on Schedules I and J, the Debtor has the ability to pay more than proposed in the plan. The

Debtor's response is that a Chapter 13 debtor's ability to pay must be determined under section 1325(b) rather than section 1325(a)(3), and that her plan satisfies the requirements of section 1325(b) as revised by BAPCPA.

Debtor's argument that section 1325(b) is the controlling provision in this case has strong historical support.  Following the adoption of the Bankruptcy Reform Act of 1978, there was considerable judicial disagreement about the meaning of the good faith standard and whether it required a particular level of payments to unsecured creditors.  See Generally 8 COLLIER ON BANKRUPTCY ¶¶ 1324.04 and 1325.LH (15th ed. rev. 2005).  The ongoing dispute regarding whether there should be a minimum level of payments in Chapter 13, other than the section 1325(a)(4) best interests of creditors test, was resolved by Congress when section 1325(b) was added to the Bankruptcy Code in the Bankruptcy Amendments and Federal Judgeship Act of 1984.  Id. at ¶ 1325.08[1]. By the time that section 1325(b) was adopted, many courts had already rejected the theory that section 1325(a)(3) required a minimum level of payment to unsecured creditors.  See Deans v. O'Donnell, 692 F.2d 968 (4th Cir. 1982); In re Rimgale, 669 F.2d 426 (7th Cir. 1982); In re Goeb, 675 F.2d 1386 (9th Cir. 1982). These decisions typically stated that the basic inquiry in determining good faith should be whether the proposed plan involved an abuse of the "provisions, purpose, or spirit" of Chapter 13 and

directed that such determination be based upon the totality of the circumstances of the case.  E.g., Deans v. O'Donnell, 692 F.2d at 972.  The circumstances that were considered by the courts included the debtor's financial situation, the amount of the debtor's proposed payments as compared with the debtor's disposable income, the amount of the payment to creditors, the period of time payment would be made, the debtor's employment history and prospects, the nature and amount of unsecured claims, the debtor's past bankruptcy filings, the debtor's honesty in representing facts, and any unusual or exceptional circumstances facing the particular debtor. Id.  Following the adoption of section 1325(b), most of the courts that considered the issue concluded that the adoption of section 1325(b) narrowed the focus for determining good faith under section 1325(a)(3) because the factors related to the debtor's ability to pay previously considered under the totality of the circumstances test were subsumed by the ability-to-pay test adopted in section 1325(b).  Noreen v. Slattengren, 974 F.2d 75, 76 (8th Cir. 1992)("Most of these factors were 'subsumed' by 11 U.S.C. § 1325(b) . . . which narrowed the focus of the bankruptcy court to 'look at factors such as whether the debtor has stated his debts and expenses accurately; whether he has made any fraudulent misrepresentation to mislead the bankruptcy court or whether he has unfairly manipulated the Bankruptcy Code.'"); In re Smith, 848 F.2d 813, 820 (7th Cir. 1988)(the adoption of 1325(b) eliminates "some

of the old factors related to minimal payments" but leaves for consideration other factors not related to ability to pay or the amount of the plan payment); Education Assistance Corp. v. Zellner, 827 F.2d 1222, 1227 (8th Cir. 1987)("This section's [1325(b)] 'ability to pay' criteria subsumes most of the Estus factors and allows the court to confirm a plan in which the debtor uses all of his disposable income for three years to make payments to creditors. . . . The bankruptcy court must look at factors such as whether the debtor has stated his debts and expenses accurately; whether he has made any fraudulent misrepresentation to mislead the bankruptcy court; or whether he has unfairly manipulated the Bankruptcy Code."); Keach v. Boyajian (In re Keach), 243 B.R. 851 (B.A.P. 1st Cir. 2000). See generally 8 COLLIER ON BANKRUPTCY ¶ 1325.04 (15th ed. rev. 2005)("Because Congress dealt with the issue [amount of plan payment] quite specifically in the ability-to-pay provisions, there is no longer any reason for the amount of a debtor's payments to be considered even as a part of the good faith standard."). It thus appears that once section 1325(b) was adopted, a debtor's ability to pay became a matter to be addressed under section 1325(b) rather than section 1325(a)(3).

While BAPCPA made significant changes to section 1325(b), nothing in those changes or elsewhere in BAPCPA suggests any legislative intent that any section of the Bankruptcy Code other than section 1325(b) should be controlling in dealing with a

Chapter 13 debtor's ability to pay.  To the contrary, as observed in COLLIER, the 2005 amendments to section 1325(b) indicate even stronger that section 1325(b), rather than section 1325(a)(3), is controlling in determining whether a debtor is committing sufficient income to a Chapter 13 plan:

> Instead of simply looking at the debtor's actual income and expenses, these [2005] amendments in many cases attempt to create a bright line test to determine whether a debtor's plan is committing all disposable income.  By creating a bright line test, Congress even more clearly indicated that it intended that section 1325(b), rather than the good faith test, to be the measure of whether the debtor was committing sufficient income to the plan.

8 COLLIER ON BANKRUPTCY ¶ 1325.08[1] (15th ed. rev. 2005).

The above observations from COLLIER regarding the 2005 amendments to section 1325(b) are fully supported by the new statutory language.  There are new definitions of the income and expenses to be used for determining disposable income that are much different than under the former statute.  These definitions are detailed and inflexible, particularly as to expenses and deductions for above-median-income debtors.  As to such debtors, it appears that Congress intended to adopt a specific test to be rigidly applied rather than a standard to be applied according to the facts and circumstances of the case. Calculating "disposable income" for above-median-income debtors under new section 1325(b) is now separated from a review of Schedules I and J and no longer turns on

the court's determination of what expenses are reasonably necessary for the debtor's support.  If, as in the present case, the debtor has current monthly income that, when annualized, is greater than the applicable median family income, the debtor is subject to section 1325(b)(3), which provides:

> Amounts reasonably necessary to be expended under paragraph (2) shall by determined in accordance with subparagraphs (A) and (B) of section 707(b)(2). . . .

The use of "shall" in section 1325(b)(3) is mandatory and leaves no discretion with respect to the expenses and deductions that are to be deducted in arriving at disposable income.  The legislative history reflects that Congress was aware that section 1325(b)(3) represented a departure from using the debtor's actual expenses in favor of IRS standards that might differ markedly from the debtor's actual expenses.  See Report of the Committee on the Judiciary, House of Representatives, to Accompany S. 256, H.R. Rep. No. 109-31, Pt. 1, p. 553, 109th Cong., 1st Sess. (2005) ("The bill also makes substantial changes to chapter 13 by substituting the IRS expense standards to calculate disposable income . . . . [T]he formula remains inflexible and divorced from the debtor's actual circumstances.") (dissenting views).  The result is that Congress has created a set of rules under which – as here – a debtor may be left with **uncommitted** income that the debtor is not required to commit to the debtor's plan under the new section 1325(b) analysis.

The controversy in this case is not about whether the

pertinent language of revised section 1325(b) is ambiguous or whether section 1325(b) requires that in determining the Debtor's disposable income, the Debtor's expenses and deductions are to be determined under section 707(b)(2)(A) and (B). Rather, the controversy is about and derives from the result of applying the language in the statute as written. Depending upon whether a debtor's actual expenses and deductions are greater or less than those specified in section 707(b)(2), an above-median-income debtor may have "excess" income that such debtor is not required to commit to the payment of unsecured creditors. The Trustee argues that such a result is unfair and contrary to the way that Chapter 13 should work and has worked in the past. However, the language of section 1325(b)(3) is unambiguous in requiring that the expenses and deductions of above-median-income debtors be determined under section 707(b)(2)(A) and (B). When the language of a statute is plain, the sole function of the courts is to enforce the statute according to its terms unless the disposition required by the text is absurd. Lamie v. U.S. Trustee, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004). While many sources question whether sections 707(b)(2) and 1325(b) represent a fair and effective approach to catching the abusers of the bankruptcy system or to insuring that debtors who can pay do pay, the court does not believe that the result in this case of applying section 1325(b)(3) as written can be rejected as being absurd. Therefore, even if the

Trustee's criticism of section 1325(b) is correct, this court is not free to ignore revised section 1325(b) or replace it with a standard pulled from section 1325(a)(3).  To do so, the court believes, would impermissibly undermine policy choices made by Congress.  "There is a basic difference between filling a gap left by Congress and rewriting rules that Congress has affirmatively and specifically enacted."  Mobil Oil Corp. v. Higginbotham, 436 U.S. 618, 625, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978).  While there may be sound reasons to rewrite section 1325(b), it is not the role of this court to do so.

For the foregoing reasons, the court concludes that with an above-median-income Chapter 13 debtor, the debtor's ability to pay and whether the proposed plan commits all of the debtor's disposable income must be determined under section 1325(b) rather than as an element of good faith under section 1325(a)(3).  Accordingly, since the Debtor does not have disposable income under section 1325(b), the Debtor's plan will be confirmed even though the plan does not provide for a payment to unsecured creditors.  A separate order so providing will be entered pursuant to Fed. R. Bankr. P. 9021.

PARTIES TO BE SERVED

Peggy Baldwin Barr
322 N. Sellars Mill Road
Burlington, NC 2721703134

Stephen D. Ling, Esq.
706 Green Valley Road, Suite 505
Greensboro, NC 27408-7023

Anita Jo Kinlaw Troxler, Trustee
Jennifer R. Harris, Attorney for Trustee